STATE of Wisconsin, Plaintiff-Respondent,

v.

Eliseo T. BROWN, Defendant-Appellant.

Court of Appeals

*No. 2009AP896–CR. Submitted on briefs December 10, 2009.
—Decided February 17, 2010.*

2010 WI App 43

(Also reported in 781 N.W.2d 244.)

236

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Devon M. Lee*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Eileen W. Pray*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Snyder, J.

¶ 1. BROWN, C.J. This is a sentence credit case resembling the Alphonse and Gaston cartoon.[1] More precisely, when an offender is on a parole *hold* in a different sovereignty that has not acted to revoke parole, should the circuit court grant sentence credit in Wisconsin for the time the offender spent in presentence confinement in Wisconsin? Or, may the Wisconsin court deny credit on the grounds that the foreign sovereignty may yet act to give credit in that state and, if it does, then the offender would be receiving double credit? We conclude that until the other sovereignty has actually acted on whether to grant credit, the Wisconsin sentence is the only outstanding sentence against which the court can grant credit. Therefore, the question of "double credit" is not ripe. So the Wisconsin court, the only court the issue of credit is before, should grant credit. Otherwise, if the other sovereignty never

---

[1] "Alphonse and Gaston" is an early 20th century "comic strip about two Frenchmen whose title has entered the language as a euphemism for exaggerated politeness." Frederick Burr Opper, 1857–1937, http://cartoons.osu.edu/newspaper_artists/opper/Opper_bio.html (last visited Feb. 9, 2010). Each comic strip begins with a variation of "After you my dear Alphonse," or "You first my dear Gaston," and continues with each character repeatedly insisting that the other one precede him until the time is too late for either one of them to act. *See, e.g.,* Frederick Burr Opper, *Alphonse, Gaston and Leon Stop for Refreshments,* http://library.osu.edu/sites/exhibits/cartoonists/images/opper/alphonse.jpg (last visited Feb. 9, 2010).

acts, the offender would not receive credit where credit is due. We reverse because the trial and post-conviction court in this case refused to order sentence credit.

## BACKGROUND

¶ 2.  Eliseo T. Brown was on a parole hold from Illinois when Wisconsin confined him and brought criminal charges. Because Brown could not post bail, he spent 285 days in a Kenosha county jail before sentencing. Then on April 29, 2008, the trial court sentenced Brown to two years of confinement to be served "[c]onsecutive to any previously imposed sentence." The trial court refused to grant any sentence credit for the 285 days of presentence confinement since Brown did not have anything in writing stating that Illinois would not grant him credit for the time he was confined in Wisconsin.

¶ 3.  Brown then filed a postconviction motion requesting sentence credit for the 285 days. The trial court again denied Brown's request on the grounds that Brown *might* end up getting "double credit" from Illinois and Brown did not have documentation from Illinois to definitively prove otherwise. Brown appeals.

## DISCUSSION

■

¶ 4.  The only issue on appeal is whether Brown should be granted 285 days of sentence credit in Wisconsin when no one knows what, if anything, Illinois will do with Brown's parole hold. Whether a defendant is entitled to sentence credit pursuant to WIS. STAT.

§ 973.155(1) (2007–08)[2] is a question of law we review de novo. *State v. Rohl*, 160 Wis. 2d 325, 329, 466 N.W.2d 208 (Ct. App. 1991).

■

¶ 5. As we alluded to earlier, the trial court's concern was whether Brown would subsequently be able to receive double credit from Illinois if it granted credit on the Wisconsin sentence for the 285 days Brown spent in the Kenosha jail. Wisconsin prohibits double credit when, as is the case here, sentences are imposed consecutively. *See State v. Boettcher*, 144 Wis. 2d 86, 100, 423 N.W.2d 533 (1988). Hypothetically, Brown could receive double credit if, after Wisconsin granted credit, Illinois were to revoke his parole, reconfine him, and then grant him credit for the same 285 days Brown spent in the Kenosha jail against his Illinois sentence.

---

[2] WISCONSIN STAT. § 973.155(1) provides, in pertinent part:

**Sentence credit. (1)** (a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;

2. While the offender is being tried; and

3. While the offender is awaiting imposition of sentence after trial.

(b) The categories in par. (a) . . . include custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole hold . . . placed upon the person for the same course of conduct as that resulting in the new conviction.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

240

¶ 6. The State proposes to allay this concern by having us rule that Brown was required to provide "some evidence" that Illinois does not intend to extradite Brown for revocation and will not credit him with the 285 days. Since Brown was not able to provide this information to the trial court, the State contends that Brown did not carry his burden of proving that he was entitled to the 285 days of sentence credit in Wisconsin.

¶ 7. The State's proposal is problematic for three reasons. First, the State is arguing that convicted offenders in situations similar to Brown now have to prove something that the law in Wisconsin has never heretofore required: that in the future, the convicted offender will not be granted sentence credit anywhere else. Requiring proof of a negative has been criticized in the past because it requires speculation and imposes an impossible burden. *See Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 355, 360 N.W.2d 2 (1984). The State cites no authority for its proposition precisely because there is no authority.

■

¶ 8. Second, the possible effect of the State's proposal is that Brown will never receive credit for those 285 days. No one knows what Illinois will do with Brown in the future. What we do know is that Brown is on parole in Illinois, is confined in Wisconsin pursuant to a Wisconsin sentence, and has earned 285 days of sentence credit. Illinois does have a parole hold on Brown, but a parole hold does not lead to reconfinement unless Illinois decides to revoke Brown's parole, holds a hearing, and reconfines him. *See* 730 ILL. COMP. STAT. ANN. 5/3–3-9(a) (West 2009) (explaining the reconfinement process); *see also Bauer v. Illinois State Prisoner Review Bd.*, 495 N.E.2d 1077, 1079 (Ill. App. Ct. 1986) (listing cases with unexecuted parole holds). We do not

know if Illinois will revoke Brown's parole. If Wisconsin does not give Brown sentence credit and Illinois never revokes Brown's parole, then Brown will never get the benefit of the credit he is due. A sentence credit decision that effectively nullifies the sentence credit earned is improper. *See State v. Wolfe*, 2001 WI App 66, ¶ 7, 242 Wis. 2d 426, 625 N.W.2d 655.

■■

¶ 9.    Third, to the extent that the State may be concerned about whether Illinois authorities would simply ignore or refuse to recognize Wisconsin's grant of sentence credit, our research has convinced us otherwise. We are satisfied that even if Illinois does revoke Brown's parole and reconfines him, it would act appropriately. This is because Illinois has just as much stake in making sure that convicted offenders do not receive double credit as we do. Illinois prohibits double credit when sentences are consecutive, *People v. Latona*, 703 N.E.2d 901, 907 (Ill. 1998), and it considers sentences of imprisonment in different sovereignties as consecutive sentences, *People ex rel. Hesley v. Ragen*, 72 N.E.2d 311, 315–16 (Ill. 1947). Moreover, Illinois treats the time an offender spends confined in a foreign jurisdiction after violating Illinois parole by committing an offense in that foreign jurisdiction as time not served towards the completion of any subsequent reconfinement as a result of the parole violation. *People v. Lawrence*, 268 N.E.2d 15, 17 (Ill. 1971).

■

¶ 10.    We conclude that Brown is due the benefit of the credit earned and that the credit must be granted in Wisconsin. If we were to conclude otherwise Brown might end up receiving no credit anywhere. He would have spent 285 days in confinement in addition to the sentence imposed. That is not fair. In fact, it may

already be too late. By our calculation, had Brown been granted his 285 days of credit in Wisconsin, he would have already completed his 2 years of initial confinement. The issue of double credit is not even ripe yet and may never be. The "double credit" issue would be ripe for consideration only if and when Illinois revoked Browns parole, and then, the issue would be for Illinois to resolve, not the Wisconsin court. And should that time ever arrive, we are confident that the Illinois prosecutor will look at the facts in our case, figure out how many days in prison Brown actually shaved from his prison term as a result of this appeal, and adhere to the Illinois precedent we cited above to deny double credit for that particular period of time.

¶ 11.   We reverse and remand for further proceedings not inconsistent with this opinion.

*By the Court.*—Judgment and order reversed and cause remanded with directions.